IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHERRI R. LOWE, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | No. 3:18-CV-525-M (BT) |
| | § | |
| GREGG A. SHALAN, et al., | § | |
| | § | |
|    Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action is a Motion to Dismiss [ECF No. 11], filed by Defendants Justice of the Peace Gregg A. Shalan, Justice of the Peace Thomas G. Jones, Dallas County Judge Clay Jenkins, and District Attorney Faith Johnson. For the reasons stated, the District Court should grant the motion and dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(1).

**Background**

On March 6, 2018, Plaintiff Sherri R. Lowe filed this action complaining that the Dallas County justice court denied her a jury trial in a tow hearing and entered an order dismissing the tow complaint for want of prosecution. Compl. 12 [ECF No. 3]. In her complaint, Plaintiff alleges that Justice Shalan lacked the qualifications and authority to preside over the tow hearing as a temporary Justice

1

of the Peace and that he impersonated a public official because he allegedly failed to file an oath of office or a bond with the Dallas County District Clerk. Plaintiff further alleges that all the defendants conspired to violate her due process rights. Compl. 14-16. By this lawsuit, Plaintiff seeks $100 million in damages, as well as declaratory and injunctive relief. Compl. 18.

In response to the Complaint, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6). Defendants argue Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. Alternatively, Defendants argue that Plaintiff fails to state a claim for relief because (1) Texas law does not provide for a jury trial in a tow hearing; (2) public documents show that Justice Shalan filed an oath of office; and (3) Texas law does not require a temporary justice of the peace to file a bond. Defendants also argue Plaintiff's claims should be dismissed because she fails to allege specific facts necessary to state a plausible claim against any of them. Defendants further argue that judicial immunity bars Plaintiff's claims against Judge Jenkins, Justice Shalan, and Justice Jones, and prosecutorial immunity bars her claims against DA Johnson. Finally, Defendants argue Plaintiff has not properly served either Justice Shalan or DA Johnson with summons in this case. Plaintiff failed to file a response to the motion to dismiss, and the time for

doing so has expired.[1]

## Legal Standards and Analysis

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and by statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

---

[1] Plaintiff has filed other documents since Defendants filed their motion, but none of those documents—even liberally construed—can be read as a response to Defendants' motion. *See* Notice of Acceptance of Constitutions and of Oath of Office [ECF No. 14]; Statement of Jurisdiction [ECF No. 15]; Verified Affidavit of Truth [ECF No. 17]; Certificate of Non-Response [ECF No. 20]; Commercial Affidavit [ECF No. 22].

When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

The *Rooker-Feldman* doctrine[2] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1521-22 (2005). "'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'" *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by a state's highest court. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's

---

[2]    This doctrine is named after *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); those decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." *Exxon Mobil Corp.*, 544 U.S. at 291.

federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 416). This jurisdictional bar extends even to those cases "'in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief.'" *Jordaan v. Hall*, 275 F. Supp. 2d 778, 788 (N.D. Tex. 2003) (quoting *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986)).

In this case, Plaintiff complains about being denied a jury trial in a Dallas County justice court tow hearing and Justice Shalan's alleged lack of qualifications and authority to preside over the hearing. Her lawsuit, in essence, is a collateral attack on the validity of the Dallas County justice court's final order dismissing her tow complaint. However, the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction to hear her challenge. *McGee v. Muskic*, 2017 WL 2703993, at *2-3 (N.D. Tex. June 1, 2017), *adopted by* 2017 WL 2691366 (N.D. Tex. June 22, 2017) (holding district court lacks jurisdiction to hear case seeking review of a Justice of the Peace's decision); *Batie v. Subway Real Estate Corp.*, 2008 WL 11350070, at *3-4 (N.D. Tex. June 24, 2008) (same).

To the extent Plaintiff complains Defendants conspired to violate her civil rights, Plaintiff's claims are inextricably intertwined with Justice Shalan's final order. "A claim is 'inextricably intertwined' with a state court judgment if, in order to find in the plaintiff's favor, the federal court would have to conclude that the

5

state court wrongly decided the issues before it or would otherwise have to void the judgment." *Brown v. Crawford*, 2008 WL 508390, at *3 (N.D. Tex. Feb. 25, 2008) (citing *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir. 1989)). A party cannot escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke*, 18 F.3d at 317 (citing cases); *Alexander v. Estrada*, 2017 WL 7052200, at *1 (N.D. Tex. July 21, 2017) (holding claim that state court violated plaintiff's constitutional rights is "a text-book example of a case barred by the *Rooker-Feldman* doctrine"). Here, a ruling in Plaintiff's favor on her civil rights claims would require overturning the decision of the Justice of the Peace court. Accordingly, Plaintiff's claims should be DISMISSED without prejudice for lack of subject-matter jurisdiction. *See Wise v. Wilmoth*, 2017 WL 3267924, at *5-6, *17 (N.D. Tex. July 3, 2017), *adopted by* 2017 WL 3267727 (N.D. Tex. July 31, 2017) (dismissing Plaintiff's constitutional claims without prejudice because the *Rooker-Feldman* doctrine divested the court of subject-matter jurisdiction to hear a claim that directly attacked the validity of the existing Justice of the Peace court judgment).

## Sanctions

In addition to the present lawsuit, Plaintiff has filed at least nine other lawsuits in the Northern District of Texas over the past several years: (1) *Lowe v. Wellcare Health Plans, Inc.,* No. 3:09-CV-806-D; (2) *Lowe v. Wellcare Health*

6

*Plans, Inc.*, No. 3:11-CV-9-L; (3) *Lowe v. ViewPoint Bank*, No. 3:12-CV-1725-G; (4) *Lowe v. Extend Health, Inc.*, No. 3:14-CV-1407-K; (5) *Lowe v. UHF Magnolia Trace, LP*, No. 3:14-CV-1460-M; (6) *Lowe v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2017-N; (7) *Lowe v. Burlington Stores, Inc.*, No. 3:16-CV-3068-B; (8) *Lowe v. Firestone Tire & Rubber Co.*, No. 3:16-CV-3067-K; and (9) *Lowe v. Dallas Police Department*, No. 3:17-CV-704-G.

In *Lowe v. Firestone Tire & Rubber Co.*, No. 3:16-CV-3067-K, Plaintiff alleged that a mechanic employed by the defendant did not know how to take off the oil filter in her vehicle and broke the housing for the oil filter while she was getting an oil change. Compl. 1 [ECF No. 3]. Plaintiff alleged that the defendant's manager informed her that the oil-filter housing was already broken, and that both the manager and mechanic acted hostilely towards her. *Id.* 1-2. Plaintiff's Complaint alleged the following claims: (1) negligence, (2) products liability, (3) breach of implied warranty, (4) breach of express warranty, (5) breach of contract, (6) battery, (7) assault, (8) liability under *res ipsa loquitur*, (9) violation of the Texas Deceptive Trade Practices Act, and (10) vicarious liability. *Id.* 2-7. Plaintiff requested $10 million dollars in damages and injunctive relief. *Id.* 7. The Court granted summary judgment in favor of the defendant and dismissed all of Plaintiff's claims and causes of action with prejudice. Findings [ECF No. 31]; J. [ECF No. 34]. The Court also determined that Plaintiff needlessly increased the

costs of litigation in the case and ordered her to pay $4,705.00 in attorneys' fees as a sanction. Order 11 [ECF No. 32].

In *Lowe v. Burlington Stores, Inc.*, No. 3:16-CV-3068-B, Plaintiff alleged that the shoes at the store were not "properly shelved" and that "a shoe fell on her left foot." Compl. 1-2 [ECF No. 3]. Plaintiff alleged the following claims in this case: (1) negligence, (2) products liability, (3) breach of implied warranty, (4) breach of express warranty, (5) breach of contract, (6) battery, (7) assault, (8) liability under *res ipsa loquitur*, (9) violation of the Texas Deceptive Trade Practices Act , and (10) vicarious liability. Compl. 2-6. Plaintiff requested $250,000 in damages, as well as declaratory and injunctive relief. Compl. 7. The Court in *Burlington* noted that the pleadings failed to show that Plaintiff sustained any damages, and the case was dismissed with prejudice. Findings 3 [ECF No. 27]; J. [ECF No. 29].

In *Lowe v. Wal-Mart Stores, Inc.*, No. 3:16-CV-2017-N, Plaintiff alleged that Wal-Mart failed to have "handheld carry baskets" or electric scooters with a safety belt to secure her co-plaintiff, Shirley Lowe-Griffith, who was elderly and paralyzed. Compl. 2 [ECF No. 3]. Plaintiff also alleged that she encountered racial discrimination when she was investigated for theft. Compl. 1. Plaintiff alleged the following claims: (1) racial disparity, (2) consumer racial profiling, (3) failure to make reasonable accommodations, (4) racial discrimination, (5) negligence, (6) intentional acts, and (7) slander and defamation. Compl. 5-16. Plaintiff requested

8

$10 million in damages and injunctive relief. Compl. 16. This case was also dismissed with prejudice. Findings 10 [ECF No. 27]; J. [ECF No. 30].

Plaintiff has inundated the court with a series of unsubstantiated lawsuits for nearly a decade. In *Lowe v. Wal-Mart Stores, Inc.*, the Court observed "this is not Plaintiff Lowe's first go-round in this tribunal," and since all her cases have been dismissed "[she] should be well enough aware of the litigation process to know that [she has] to raise specific factual allegations to avoid dismissal of [her] claims." Findings 10 n.2 [ECF No. 27]. In addition to being sanctioned by this Court for needlessly increasing the costs of litigation as noted above, Order [ECF No. 32], Plaintiff also has been declared a vexatious litigant by the 193rd Judicial District Court of Dallas County, Texas, and is now required to seek and receive written permission from the Local Administrative Judge for Dallas County prior to filing any new *pro se* litigation in Texas state courts. *Lowe v. Firestone Tire & Rubber Co.*, No. 3:16-CV-3067-K, Ex. 1 [ECF No. 17-1].

The Fifth Circuit has recognized the limited resources of the federal courts and the importance of preserving them for substantial claims:

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal

9

> judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 257 (5th Cir. Unit A Mar. 1981). To preserve judicial resources for substantial claims, as the Fifth Circuit advised in *Raymon*, Plaintiff should be barred from filing additional lawsuits in this court without first obtaining permission from a district or magistrate judge of this court. *See id.*; *Hubbard v. Able*, 2003 WL 2124962, at *1 (N.D. Tex. Apr. 16, 2003) ("Plaintiff was barred from filing any lawsuits in this court without first obtaining leave of court from a district or magistrate judge of this court. . . . [T]he Court specifically noted that Plaintiff had filed a 'series of bizarre and often unintelligible pleadings' which are 'patently frivolous and place an undue burden on the court and clerk to address them . . . .'").

## **RECOMMENDATION**

The District Court should grant Defendants' Motion to Dismiss [ECF No. 11] and dismiss Plaintiff's claims without prejudice for lack of subject-matter jurisdiction.

The Court should further order that Plaintiff be required to obtain permission from the Court prior to filing any additional lawsuits in the Northern

10

District of Texas.

**SO RECOMMENDED**.

January 23, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).